UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

BRUNILDA UBILES,

                    Plaintiff,          **No. 11-CV-6340T(MAT)**
          -vs-                          **DECISION AND ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.

———————————————————

## I.  Introduction

Represented by counsel, Brunilda Ubiles ("Plaintiff" or "Ubiles"), brings this action pursuant to Title XVI of the Social Security Act, seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). This Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## II.  Factual Background and Procedural History

### A.   Overview

Plaintiff filed an application for supplemental security income benefits on August 14, 2006, alleging disability due to chronic back pain with an onset date of May 15, 2006. R.55-59.[1] After the claim was denied on November 21, 2006, R.46, Plaintiff timely filed a written request for a hearing before an ALJ which

---

[1] Numerals preceded by "R." refer to pages in the administrative record.

was held on December 11, 2008. R.185-215. In a decision dated January 22, 2009, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). R.19-25. The Appeals Council which denied Plaintiff's request for review on May 6, 2011, thereby rendering the ALJ's decision the final decision of the Commissioner. R.4-6.

Plaintiff filed this action on July 12, 2011, asserting that the ALJ's decision was not supported by substantial evidence in the record and was based on the ALJ's application of erroneous legal standards. Plaintiff has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rule of Civil Procedure ("Rule 12(c)") seeking to reverse the judgement of the Commissioner and remand for further administrative proceedings. The Commissioner has opposed the motion and has cross-moved for judgment on the pleadings.

For the reasons set forth below, this Court finds that the ALJ's decision contains several legal errors which require remand. Plaintiff's motion is granted insofar as the Commissioner's decision is reversed and the matter is remanded for further proceedings consistent with this opinion. The Commissioner's cross-motion is denied.

B.   **The Non-Medical Evidence**

Plaintiff was born in June 1967. R.62. After graduating from high school, she completed a year of college. R.60, 204. From 1992

through 2001, she worked at McDonald's restaurant. R.57. Plaintiff acknowledged that she ceased working for reasons unrelated to her allegations of disability. R.56.

Plaintiff testified that she lives with her four-year-old son and serves as sole caregiver for the child, who does not attend daycare or kindergarten. R.204. Plaintiff goes grocery shopping with her neighbor's assistance and visits stores to buy clothes for her child. R. 204-05, 210. She can drive for short trips. R. 205. She cooks quick meals in the oven or microwave. R.205. Plaintiff's adult daughter visits on weekends, but Plaintiff does not go visit her. R.205-06, 207. Plaintiff last traveled three months prior to the December 2008 hearing, when she visited Puerto Rico. R. 208.

Plaintiff testified that she began experiencing back pain after kneeling down to give her son a bath in May 2006. R.190. She also has complained of depression and migraines as well as leg, neck, and shoulder pain. R.190, 198-200. She has principally treated with Dr. Eddy Laroche, her general practitioner. She attended physical therapy for four or five months during the summer of 2007. R.193. Although she took medication for her pain and migraines, she testified it made her dizzy and fatigued. R. 194-95. She testified that Dr. Laroche had recommended surgery for her back. R.201-03.

**B.    Medical Evidence from the Period Prior to August 14, 2006, the Date of Plaintiff's Application**

Plaintiff's primary care physician, Dr. LaRoche, has treated Plaintiff for lower back pain from June 2006, through the present. R.112-16. Dr. Laroche's treatment notes reflect that Plaintiff visited the emergency room in June 2006 for back pain and also underwent physical therapy, which provided results ranging from "good" to "fair" to no improvement. R.112-16.

Plaintiff underwent an x-ray of her lumbosacral spine performed on May 22, 2006, which showed normal vertebral bodies and intervertebral disc spaces. R.126. There was no spondylolisthesis (the anterior or posterior displacement of a vertebra or the vertebral column in relation to the vertebrae below). A CT scan of Plaintiff's lumbar spine taken on that same date revealed normal vertebral bodies and intervertebral disc space and no evidence of focal disc herniation. R.127. An MRI of Plaintiff's lumbar spine on June 16, 2006, revealed mild disc desiccation and mild posterior protrusion at the L4-L5 disc level with anterior indentation of the thecal sac. R.128.

In August 11, 2006, imaging of the lumbar spine showed no fracture or spondylolisthesis but did show mild disc space narrowing at L4-L5. Other disc spaces appeared unremarkable. R.129. A no-contrast CT scan of the lumbar spine performed that same date showed no signs of spondylolysis or spondylolisthesis. R.130-31.

-4-

The CT scan revealed very mild disc degenerative changes with minor focal disc protrusions at the level of L3 to S1, without signs of nerve root compression. R.131.

### C. Medical Evidence From the Relevant Period (August 14, 2006, the Date of Plaintiff's Application, to January 22, 2009, the Date of the ALJ's Decision)

Plaintiff visited the Clifton Springs Hospital and Clinic on August 24, 2006, with complaints of lower back pain that were sharp, severe, and relieved by nothing. R.107-08. Plaintiff's back appeared normal upon visual inspection. 108. Straight leg raising tests were negative, and Plaintiff had no apparent motor or sensory deficits. Plaintiff retained intact reflexes, and her extremities were non-tender with a full range of motion. R.108.

Plaintiff saw Dr. Laroche on August 25, 2006, rating her back pain at eight to nine out of ten. Plaintiff appeared stable with no lumbosacral spinal swelling, redness, or defect. R.111. She complained of some discomfort upon forward bending and hyperextension of her back. While she experienced some pain upon active and passive rotation of the upper body, she had no pain with straight leg raising. R.111. Plaintiff was instructed to continue with Lortab and increase her Lyrica dosage. Dr. Laroche referred her to Dr. Holder at the pain clinic. R.111.

When Plaintiff saw Dr. Laroche again on September 1, 2006, she reported mild improvement in her discomfort and rated her back pain as a seven out of ten. Plaintiff complained of some pain radiation

to the lower extremities but denied any numbness or tingling sensation. R.110. She complained of some discomfort upon forward bending and hyperextension of her back; mild pain upon active and passive rotation of the upper body; and no pain associated with straight leg raising. Examination revealed good strength in both lower extremities. R.110. Dr. Laroche advised Plaintiff to continue with Lortab and Lyrica and to follow up in two weeks. R.110.

On September 15, 2006, Plaintiff saw Dr. Laroche, again complaining of significant lower back discomfort with numbness and tingling in both lower extremities. R.109, repeated at R.134. She rated her pain as an eight on a scale of one to ten. Dr. Laroche observed that Plaintiff looked very uncomfortable but was not in acute distress. Examination revealed no swelling or redness but plaintiff complained of severe pain upon forward bending and hyperextension of her back. R.109. She reported mild discomfort upon active and passive rotation of the upper body; no pain with straight leg raising; and no sensory deficits. R.109. Dr. Laroche referred Plaintiff to Dr. Ziedman for a surgical evaluation. She was to continue with Lyrica and Lortab. R.109. The record contains no treatment notes from Dr. Ziedman, although Plaintiff testified that she did consult with him. Dr. Zeidman advised that he would not perform surgery unless her legs evidenced paralysis. T.196.

Plaintiff saw Dr. Laroche on October 19, 2006, complaining of
back pain radiating into both legs. R.135. She reported obtaining
some relief from medication. Examination of the lumbosacral spine
revealed no redness or swelling, but Plaintiff still experienced
poor ranges of motion. R.135.

On October 30, 2006, at the Commissioner's request, James
Naughten, M.D. ("Dr. Naughten") consultatively examined Plaintiff.
R.118-20. Dr. Naughten observed that Plaintiff took very short
steps and used a back brace. R.119. She had to hold onto the exam
table to walk on her toes and declined to walk on her heels.  She
could do a full squat, did not need help changing clothes or
getting on or off the exam table, and was able to rise from a chair
without difficulty.  She had normal grip strength in both hands and
had full range of motion in her shoulders, arms, hands, and hips,
knees, and ankles.  She complained of bilateral lumbar pain, spasm,
and spinal and paraspinal tenderness. She retained intact hand and
finger dexterity and full grip strength (5/5) bilaterally. R.119.
With regard to Plaintiff's upper extremities, examination revealed
full ranges of motion with no joint inflammation, effusions, or
instability. She retained full muscle strength (5/5) and had no
muscle atrophy or sensory abnormality in the upper extremities.
R. 119. Plaintiff retained equal and normal reflexes.

Dr. Naughten's examination of the thoracic and lumbar spines
revealed restricted extension and flexion as well as spinal

-7-

tenderness upon palpation. Straight leg raising tests were positive on the left side at twenty degrees and on the right side at fifteen degrees. R.119. Seated straight leg raising test was ninety degrees bilaterally. Plaintiff had no trigger points. R.119. With regard to the lower extremities, Plaintiff displayed restricted ranges of motion of the hips but full ranges of motion in the knees and ankles bilaterally. R.119-20. Strength was 3/5 in the right leg and 4/5 in the left leg. R.120. Plaintiff reported increased sensitivity to touch and pain in the right leg.

Plaintiff estimated the severity of her back pain was six out of ten which radiated down her right leg. Dr. Naughten stated that when he came in the examining room, Plaintiff was slumped over the exam table. She cried out from intense pain during the exam. Dr. Naughten's medical source statement reported no limitations for seeing, hearing, talking, or sitting; moderate limitations for standing, walking, and climbing stairs; and mild limitations for pushing, pulling, and reaching. Based on his examination, Dr. Naughten concluded that Plaintiff "should be able to lift, carry, and handle objects of a minor of [sic] weight on an occasional basis only due to extreme low back pain." R.120.

When Plaintiff returned to see Dr. Laroche on November 14, 2006, and December 12, 2006, he observed that although she appeared very uncomfortable, she was in no acute distress. R.136, 138. Examination of the lumbosacral spine revealed no redness or

swelling or other defect. Plaintiff complained of severe discomfort upon attempt at forward bending and hyperextension of her back. R.136, 138.

At her January 9, 2007; February 6, 2007, and April 19, 2007, appointments with Dr. Laroche, Plaintiff reported severe discomfort upon forward bending and hyperextension of her back. She complained of severe pain upon active and passive rotation of the upper body but no pain  with the straight leg raising test. Plaintiff had no sensory deficits. R.139. On March 19, 2007; and June 12, 2007, lumbosacral spine examination revealed no defect and a limited range of motion. R.144. The doctor prescribed Lortab, Skelaxin, and Lyrica and referred Plaintiff to the pain clinic.

At follow-up visits on July 16, 2007, and August 14, 2007, Plaintiff saw Dr. Laroche complaining of increasing back discomfort with pain radiating to her lower extremities. Again, examination of her lumbar spine revealed no defect but showed a limited range of motion.  On August 14, 2007, and August 28, 2007, Dr. Laroche stated without elaboration that Plaintiff was "presently disabled." R.146, 147.

On September 28, 2007, Dr. Laroche noted that Plaintiff looked healthy. R.148. Examination of the lumbosacral spine showed no defect, redness, or swelling, but Plaintiff nevertheless complained of severe pain upon forward bending and hyperextension of her back. Dr. Laroche noted that Plaintiff was not a candidate for surgical

-9-

intervention. R.148. Plaintiff again complained of severe pain upon active and passive rotation of the upper body. Dr. Laroche referred Plaintiff to the pain clinic for her back pain and advised her to see an orthopedist for her right lateral epicondylitis and right carpal tunnel syndrome. R.148.

On October 29, 2007, Plaintiff appeared stable with good interaction with Dr. Laroche, but had intermittent crying spells. R.149. The lumbosacral spinal examination revealed no defect but Plaintiff reported severe pain upon forward bending and hyperextension of her back. Mental status evaluation showed good thought processes. Dr. Laroche prescribed OxyContin and advised Plaintiff to continue with Lortab and Lyrica. R.149. He also prescribed Cymbalta for Plaintiff's adjustment disorder.

On November 30, 2007, Plaintiff reported a fair response from the OxyContin and Lortab. R.150. She denied any drowsiness or sleepiness from the medication. Dr. Laroche noted that Plaintiff scheduled to undergo surgery on her right wrist for carpal tunnel syndrome. R.150.

On December 28, 2007, Plaintiff stated that her back pain ranged from a two to four on a scale to ten. R.151. She denied any dizziness. Examination of the lumbar spine remained the same. R.151. On February 11, 2008, Dr. Laroche noted that examination of the lumbosacral spine revealed no redness or swelling but showed a limited range of motion. R.152. Dr. Laroche told Plaintiff to

continue with a Duragesic patch and Lortab. R.152. On March 11, 2008, Dr. Laroche discontinued the Duragesic patch due to skin irritation and prescribed OxyContin. R.153. Examination of the lumbosacral spine showed no redness or swelling but Plaintiff complained again of severe pain upon forward bending and hyperextension of her back as well as severe pain upon active and passive rotation of the upper body. R.153.

On April 4, 2008, Plaintiff's lumbar spinal examination results remained the same. R.154. Dr. Laroche prescribed Vicodin and told her to continue with Lyrica. On May 6, 2008, Dr. Laroche noted that Plaintiff was stable. R.155. Plaintiff denied any side effects from her medication or experiencing any dizziness. Dr. Laroche described Plaintiff's functioning as fair and noted that she had good interaction within the family setting. R.155.

Plaintiff denied medication side effects on June 3, 2008. R.156. Dr. Laroche made no treatment changes on June 3, June 17, and July 1, 2008. R. 156, 157, 158.

Plaintiff reported to Dr. Laroche significant improvement with medication on July 15, 2008. R.159. She rated her back discomfort as a two on a scale of one to ten. The numbness and tingling appeared to be resolving. Dr. Laroche advised conservative management and continuation with the same medication. R.159.

On July 21, 2008, Dr. Laroche noted no change in her condition. R.160. when Plaintiff saw Dr. Laroche on July 28, 2008,

she rated her pain as a four on a scale to ten. R.161. She denied any further numbness or tingling sensation in the lower extremities. R.161. On July 28 and August 11, 2008, examination revealed a limited range of motion in the spine. R.161, 162.

On September 15, 2008, Plaintiff of increased back pain due mainly to a change in the weather. R.163. She rated her pain as a seven out of ten. Spinal examination revealed no swelling or redness and limited ranges of motion. Neurological evaluation was unremarkable. R.163. Dr. Laroche advised no changes in treatment.

On October 15, 2008, Plaintiff complained of feeling tired, exhausted, and "down". She reported poor interaction within the family setting. Dr. Laroche observed that Plaintiff appeared exhausted but in no acute distress. R.164. Dr. Laroche stated that her pain "seemed to be getting worse" as she rated it an eight out of ten. R.164. Mental status evaluation revealed good thought processes. Spinal examination revealed a limited range of motion. R.164. Dr. Laroche prescribed a Flector patch and instruct Plaintiff to continue with her current medications. He also increased her Cymbalta dosage for her depression. R.164.

### D.   The ALJ's Decision

On January 22, 2009, the ALJ denied Plaintiff's application for SSI, R.25, finding that (1) Plaintiff was a younger individual (42 years old) as defined by the regulations, had at least a high school education, could communicate in English, and her past

relevant work was unskilled; (2) Plaintiff had not engaged in substantial gainful activity during the relevant time period; (3) that her chronic low back pain was a severe impairment; (4) that although her impairment was severe, it did not meet any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) that despite her impairment, Plaintiff retained the residual functional capacity ("RFC") to perform a full range of sedentary work; (6) that she could not perform past relevant work since her past work as a fast food worker exceeded sedentary exertion; and (7) based on the Medical Vocational Guidelines and the medical evidence in the record, Plaintiff was not disabled.

### E.   The Appeals Council

In connection with her appeal, Plaintiff submitted additional notes from Dr. LaRoche to the Appeals Council which were accepted into the record with dates ranging from December 29, 2010 to March 17, 2011. R.6-A. On May 6, 2011, the Appeals Council denied Plaintiff's request for review. R.4-6.

## III. Discussion

### A.   Legal Standards for Determining Disability

Claimants, like Plaintiff, who are under the age of fifty-five and have insured status, are eligible for disability insurance benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a

continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must be "of such severity that [the claimant] . . . cannot, considering [her] age, education, and work experience, engage in any . . . substantial gainful work which exists in the national economy." Id., § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether an individual is entitled to disability benefits. See, e.g., Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (summarizing 20 C.F.R. § 404.1520). "The inquiries at steps four and five follow from the Commissioner's determination of the claimant's residual functional capacity ("RFC")." Hilsdorf v. Commissioner of Social Sec., 724 F. Supp.2d 330, 341 (E.D.N.Y. 2010) (citing 20 C.F.R. §§ 404.1520(a)(4)(iv)-(v)). The claimant's RFC represents her "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. It is the most a claimant can still do despite his or her limitations." 20 C.F.R. § 416.1545(a)(1).

"The burden of proving disability, encompassing the first four of these steps, is on the claimant[,]" Rivera v. Schweiker, 717 F.2d 719, 722 (2d Cir. 1983), while "[t]he burden of proving the fifth step is on the Secretary[,]" id. at 723 (citing Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980)). In other words, "there is a limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." Poupore

-14-

v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)
(citing 20C.F.R. § 404.1560(c)(2)).

**B.    Duty to Develop the Record and the Treating Physician's Rule**

Plaintiff contends that the ALJ did not properly develop the
record by obtaining medical records from all of her treatment
providers. Relatedly, Plaintiff contends that the ALJ could not
properly have applied the treating physician rule because he did
not obtain a Medical Source Statement from Dr. Laroche.

At the commencement of the administrative hearing in December
2008, Plaintiff's attorney indicated that he was in the process of
obtain a Medical Source Statement from Dr. Laroche assessing
Plaintiff's physical limitations function-by-function. R.185. The
ALJ suggested that Dr. Laroche fax his opinion directly to the
ALJ's office and offered to give his fax number to Plaintiff's
attorney. R.186. At the close of the hearing, the ALJ reiterated
that he was waiting to receive Dr. LaRoche's medical source
statement and would leave the record open for the doctor's report.
R. 214.

Plaintiff submitted additional evidence to the Appeals Council
consisting of Dr. Laroche's treatment notes for December 29, 2010
R. 173-75); January 5, 2011 R. 172); January 28, 2011 R. 170-71);
January 31, 2011 R. 169); March 1, 2011 R. 168); and March 17, 2011

R. 166-67).[2] The Medical Source Statement was not among those records. The ALJ's decision makes no reference to whether the Medical Source Statement ever was received from Dr. Laroche.

Although "[t]he claimant has the general burden of proving that he or she has a disability within the meaning of the Act," "because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks and brackets omitted); see also Sims v. Apfel, 530 U.S. 103, 111 (2000) (noting that the non-adversarial nature of Social Security proceedings requires the ALJ "to investigate the facts and develop the arguments both for and against granting benefits"). This duty is not obviated "when a claimant is represented by counsel." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

The "treating-physician rule" mandates that the opinion of a claimant's treating physician "regarding the nature and severity of [the claimant's] impairments" be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §

---

[2]
The Act's regulations authorize a claimant to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision. 20 C.F.R. §§ 404.970(b), 416.1470(b). This evidence becomes part of the administrative record on appeal to the federal courts should the Appeals Council deny review. Perez, 77 F.3d at 45.

404.1527(d)(2); see also, e.g., Burgess, 537 F.3d at 128. A treating physician is defined as the claimant's own physician "who has provided the individual with medical treatment or evaluation, and who has or who had an ongoing treatment and physician-patient relationship with the individual." Schisler v. Sullivan, 3 F.3d 563, 569 (2d Cir. 1993). Treating physicians' opinions generally are entitled to more weight because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical evidence alone or from reports of individual examinations, such as consultative examinations." 20 C.F.R. § 404.1527(d)(2).

Consequently, "the opinion of a treating physician is an especially important part of the record to be developed by the ALJ." Hilsdorf, 724 F. Supp.2d at 343. The importance of the treating physician's evidence is underscored by the Act's requirement that the Commissioner "shall make *every reasonable effort* to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make [a disability determination], prior to evaluating medical evidence obtained from any other source on a consultative basis." 42 U.S.C. § 423(d)(5)(B) (emphasis supplied).

-17-

Here, the record does not contain a function-by-function assessment of Plaintiff's physical limitations from an acceptable medical source. Where, as here, there is a gap in the record concerning the findings of a treating physician, the ALJ has an affirmative duty to seek out the missing information. <u>Schaal</u>, 134 F.3d at 505 ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] <u>sua</u> <u>sponte</u>.") (citing <u>Perez</u>, 77 F.3d at 47 ("[T]he ALJ generally has an affirmative obligation to develop the administrative record. This duty exists even when the claimant is represented by counsel . . . .") (citations omitted)). Based upon the colloquy that occurred at the beginning of the hearing, the ALJ was on notice that the record did not contain a Medical Source Statement from Plaintiff's treating physician.

Although an ALJ may decline to seek additional records when he "know[s] from past experience that the source either cannot or will not provide the necessary findings," 20 C.F.R. § 404.1512(e)(2), the ALJ did not indicate that this was the reason for the missing records. When the ALJ issued his decision denying benefits, there was no mention of the function-by-function assessment that was supposed to have been provided by Dr. Laroche. It may very well be that the ALJ attempted to follow-up with Dr. Laroche and was unable to obtain a completed assessment from him. However, this cannot be discerned from the record as it stands. "Without some reasonable

-18-

explanation for the ALJ's failure to obtain these records, the [C]ourt is not satisfied that the ALJ fulfilled his affirmative obligation to develop the record." <u>Hilsdorf</u>, 724 F. Supp.2d at 345 (citing <u>Hardhardt v. Astrue</u>, No. 05-CV-2229(DRH), 2008 WL 224499, at *9 (E.D.N.Y. May 29, 2008)); <u>see</u> <u>also</u> See <u>Peed v. Sullivan</u>, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991) (explaining that "the combined force of the treating physician rule and of the duty to conduct a searching review requires that the ALJ make every reasonable effort to obtain not merely the medical records of the treating physician but also a report that sets forth the opinion of that treating physician as to the existence, the nature, and the severity of the claimed disability").

The ALJ's failure to develop the record with regard to Dr. Laroche's Medical Source Statement resulted in the misapplication of the treating physician rule. Pointing to Dr. Laroche's statements in two office notes that Plaintiff was "presently disabled" due to her chronic back pain secondary to lumbar stenosis, <u>see</u> R.146, 166, the ALJ found that "the limitations reported by the claimant's primary care physician Dr. Laroche [we]re vague and non-specific." R.24. Granted, both of Dr. Laroche's notes failed to indicate Plaintiff's function-by-function limitations. However, they were simply notes from an office visit; it is unreasonable to expect a physician to make, on his own accord, the detailed functional assessment

demanded by the Act in support of a patient seeking SSI benefits. It was incumbent on the ALJ to request a function-by-function assessment of Plaintiff's physical limitations from Dr. Laroche and recontact Dr. Laroche for clarification of his "vague and non-specific" limitations. See 20 C.F.R. §§ 404.1512(e), 416.912(e)(1) ("The regulations thus provide that, '[w]hen the evidence we receive from your treating physician . . . is inadequate for us to determine whether you are disabled, . . . [w]e will first recontact your treating physician . . . to determine whether the additional information we need is readily available.") Carston, 2008 U.S. Dist. LEXIS 38132, at * 26 – 27. The ALJ's failure to do so was error.

Lacking important information–namely, the function-by-function assessment from Dr. Laroche, the ALJ was unable to properly apply the treating physician rule and instead gave controlling weight to the consultative physician's opinion. This was legal error. See Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990) ("[A] consulting physician's opinions or report should be given limited weight."); Bluvband v. Heckler, 730 F.2d 886, 894 (2d Cir. 1984) (ALJ should not baldly accept consulting physicians' evaluations which are disputed and formulated after they had examined claimant only once), superseded on other grounds by regulation, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), as recognized in Schisler v. Sullivan, 3 F.3d 563, 567 (2d Cir. 1993).

Plaintiff also argues that the ALJ failed to adequately develop the record with regard to other medical providers seen by Plaintiff. As Plaintiff points out, there is missing medical evidence from Plaintiff's multiple emergency room visits, physical therapy visits, Dr. Bakof, Dr. Ziedman, Dr. Lasser, Dr. Maxwell, and Dr. Holder of the Pain Clinic. The record references to multiple emergency room visits due to the exacerbation of Plaintiff's symptoms. R.116, 146. These treatment records are not contained in the file. The also record references physical therapy visits, R.113-15, but these records are not contained in the file. There are multiple references to Plaintiff being seen by a neurosurgeon. For example, on July 21, 2006, Dr. Laroche referred Plaintiff to a neurosurgeon. T 113. On August 4, 2006, Dr. Laroche noted that Plaintiff was seen by a neurosurgeon, Dr. Bakof, on July 26, 2006, at which surgery was considered, and a follow-up appointment was scheduled in a week's time. R.112. On September 15, 2006, Dr. Laroche again noted that Plaintiff had treated with Dr. Bakof. R.109. On September 15, 2006, Dr. Laroche referred Plaintiff

to Dr. Ziedman for further evaluation and management. R.109. Also, on August 25, 2006, Plaintiff was referred to Dr. Holder of the pain clinic. R.111. Referrals to Dr. Maxwell and Dr. Lasser were also noted by Dr. Laroche. R.136, 138. However, none of these records are contained in the file.

-21-

The ALJ referenced the consultative examinations with those specialists and apparently penalized Plaintiff for their absence, stating that "there are no consultative reports in the exhibit file." R.21. This is error. See Sanchez v. Barnhart, 329 F. Supp. 2d 445, 450 (S.D.N.Y. 2004) ("Accordingly, 'an ALJ may not rely, as factfinders in adversarial proceedings customarily do, on the absence of probative evidence supporting the opinions of a claimant's expert, without making an affirmative effort to fill any gaps in the record before him.'") (quoting Thomas v. Barnhart, 2002 U.S. Dist. LEXIS 20942, at *4 (S.D.N.Y. 2002)). The record does not reflect that the ALJ requested those missing records and, again, this was error. See id.

The failure to develop the record cannot be harmless error because the ALJ relied on perceived gaps in the medical evidence to find Plaintiff not disabled. For instance, the ALJ found that "[t]here are no corroborating reports of consultations by specialists or follow-up treatment." R.24. The ALJ also relied on these gaps in the record to discredit Plaintiff's subjective complaints of pain and physical limitations, stating that Plaintiff's "lack of treatment and follow-up is inconsistent with the degree of pain and limitation asserted." R.24. Although the ALJ is not required to obtain every medical file from every medical source the claimant has seen, the ALJ must request additional evidence if the administrative record does not contain sufficient

evidence to make a fair determination, as is the case here. See Perez v. Chater, 77 F.3d 41, 47-48 (2d Cir. 1996).

The Commissioner asserts that the ALJ fully satisfied his obligation to develop the record because, in paperwork completed by Plaintiff and reviewed by Administration employees prior to the hearing, Plaintiff did not indicate the names of many of the medical providers that ultimately appear or are referenced in her records. This argument is unavailing. Where, as here, it is apparent from the face of the record that necessary information is missing, the ALJ cannot be relieved of his affirmative obligation to develop the record simply by virtue of a plaintiff's statements. See Hilsdorf, 724 F. Supp.2d at 346 (holding that ALJ not relieved of duty to develop record where it was obvious that record was incomplete, notwithstanding claimant's counsel's statement that the medical record was complete) (citing Males v. Astrue, 522 F.3d 1093, 1097 (10th Cir. 2008) (citation omitted).

## B.   The Commissioner's RFC Determination

Plaintiff argues that the ALJ's residual functional capacity determination was not supported by substantial evidence, and that the ALJ improperly relied solely on the grids to support his decision.

As noted above, a claimant's RFC represents an assessment of her "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. .

. ." 20 C.F.R. § 416.1545(a)(1). Here, the ALJ determined that Ubiles retained the ability to perform "the full range of sedentary work, as defined in 20 CFR 416.967(a)." R.23. Sedentary work is defined as work that primarily involves sitting, but also involves occasional walking, standing, and lifting. 20 C.F.R. § 416.967(a). To perform sedentary work, the claimant must be able to sit for approximately six hours per day, walk or stand for approximately two hours per day, and lift up to ten pounds. See SSR 96-9p, 1996 WL 374185, at *6.

The Regulations provide in pertinent part that the Commissioner "will assess [the claimant's] residual functional capacity based on all of the relevant medical and other evidence." 20 C.F.R. 416.945(a)(3). The Commissioner is not "permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion, or indeed for any competent medical opinion." Burgess v. Astrue, 537 F.3d at 128. "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient." Martone v. Apfel, 70 F. Supp.2d 145, 150 (N.D.N.Y. 1999) (citing, inter alia, Ferraris v. Heckler, 728 F.2d 582, 588 (2d Cir. 1984); Sullivan v. Secretary of Health & Human Servs., 666 F. Supp. 456, 460 (W.D.N.Y. 1987)).

"RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations."

Farley v. Commissioner of Social Sec., 5:10-CV-536 TJM/ATB, 2011 WL
4074372, at *11 (N.D.N.Y. Feb. 22, 2011) (citing Martone, 70 F.
Supp.2d at 150). "With regard to physical limitations, the ALJ must
make a function-by-function assessment of the claimant's ability to
sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or
crouch." Dillingham v. Astrue, No. 09-CV-236 (GLS/VEB), 2010 WL
3909630, at *11 (N.D.N.Y. Aug. 24, 2010) (citing 20 C.F.R.
§§ 404.1513(c)(1), 404.1569a(a), and 416.969a(a)). In addition, the
ALJ must include in the RFC assessment a narrative discussion,
describing how the evidence supports the ALJ's conclusions, citing
specific medical and non-medical evidence. Id. at *11 (citing Trail
v. Astrue, 5:09-CV-1120, 2010 WL 3825629, at *6 (N.D.N.Y. Aug. 17,
2010) (citing SSR 96-8p, 1996 WL 374184, at *7). The ALJ did not do
so here, simply concluding that "[b]ased upon the limitations
assessed to the claimant by [consultative physician] Dr. Naughten,
the DDS medical reviewers concluded that she was capable of
performing at least sedentary work." R.24. The ALJ erroneously
failed to discuss any evidence, let alone specific facts in the
record, supporting his conclusion that Plaintiff had the ability to
stand and walk up to two hours and sit for six hours in an eight
hour work day, as is required for sedentary work. See 20 C.F.R.
§ 416.967(a).

Although the ALJ stated that his summary RFC assessment was
"supported by the consultative examiner's findings," R.24 (citing

R.118-20), the ALJ failed to evaluate the specific limitations contained in Dr. Naughten's opinion when assessing Plaintiff's RFC. Although the ALJ noted at Step 2 that Dr. Naughten opined that Plaintiff had "moderate limitations in standing, walking, climbing stairs, and lifting minor weights," R.22, the ALJ failed to state how it was consistent with the ALJ's RFC finding. As a result, it is unclear how Dr. Naughten's vaguely stated physical limitations are consistent with the RFC finding of sedentary work. R.120. See 20 C.F.R. § 405.370 (An ALJ is required to "prepare a written decision that explains in clear and understandable language the specific reasons for the decision."). Moreover, the statement by Dr. Naughten upon which the ALJ relied was entirely too vague to serve as a proper basis for an RFC. See Hillsdorf, 724 F. Supp.2d at 348 ("To demonstrate that Plaintiff was capable of light to sedentary work, the ALJ points to Dr. Park's statement that Plaintiff had 'limitations of a mild degree of lifting, bending, walking, standing, and pushing and pulling on arm controls.' This vague statement cannot serve as an adequate basis for determining Plaintiff's RFC.") (citation omitted). See, e.g., Hilsdorf, 724 F. Supp.2d at 349 ("Because the ALJ failed to assess Plaintiff's exertional and postural abilities on a function-by-function basis, his RFC determination cannot be upheld by this court.") (citing Brown v. Barnhart, No. 01-CV-2962, 2002 WL 603044, at *5-7 (E.D.N.Y. Apr. 15, 2002) ("[B]ecause the ALJ did not properly apply

the legal standard in Social Security Ruling 96-8p for assessing residual functional capacity, I cannot properly conclude that his finding that the claimant retained the residual functional capacity to do her past work was supported by substantial evidence.")); <u>Wood v. Commissioner of Social Sec.</u>, No. 06-CV-157, 2009 WL 1362971, at *6 (N.D.N.Y. May 14, 2009) (collecting cases); <u>McMullen v. Astrue</u>, 05-CV-1484, 2008 WL 3884359, at *6 (Aug. 18, 2008); <u>Matejka v. Barnhart</u>, 386 F. Supp.2d 198, 208 (W.D.N.Y. 2005) ("The ALJ's decision did not address the plaintiff's ability to sit, stand, or walk . . . . Since the ALJ failed to make a function-by-function analysis of plaintiff's RFC, his determination that she had the RFC for sedentary work is not supported by substantial evidence."). On the present record, the Court is unable to discern how the ALJ arrived at the conclusion that Plaintiff could perform "sedentary work." <u>See</u> 20 C.F.R. § 405.370 (An ALJ is required to "prepare a written decision that explains in clear and understandable language the specific reasons for the decision.").

An additional error occurred in connection with the AlJ's consideration of Dr. Naughten's evidence inasmuch as the ALJ failed to specify what weight he assigned to Dr. Naughten's opinion, apparently adopting it as the controlling medical opinion. The ALJ "must explain the weight given to the [consultative examiner's] opinions in [his] decision." SSR 96-6p. Consultative examinations cannot provide substantial evidence to defeat treating source

-27-

opinions because they are "'often brief, are generally performed without the benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day.'" Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1992) (quoting Torres v. Bowen, 700 F. Supp. 1306, 1312 (S.D.N.Y. 1988)); see also Spielberg v. Barnhart, 367 F. Supp. 2d 276, 282-83 (E.D.N.Y. 2005) (holding that an ALJ gave too much weight to a one-time assessment by a consultative physician). The Court further notes that the prognosis articulated by Dr. Naughten is problematically vague. Dr. Naughten described Plaintiff's prognosis as "possibly guarded" and does not provide any further explanation. This statement is too ambiguous too be of any use to an adjudicator.

In the absence of a medical opinion to support the ALJ's finding, "it is well-settled that 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.'" Balsamo v. Chater, 142 F.3d 75, 80-81 (2d Cir. 1998) (quoting ); see also Rosa, 168 F.3d 75 at 79. Because an RFC determination is a medical determination, an ALJ who makes such a finding "in the absence of supporting expert opinion has improperly substituted his own opinion for that of a physician and has committed legal error." Hillsdorf, 724 F. Supp.2d at 347 (citing, inter alia, Woodford v. Apfel, 93 F. Supp.2d 521, 529 (S.D.N.Y. 2000) ("An ALJ commits legal error when he makes a residual functional capacity

determination based on medical reports that do not specifically explain the scope of claimant's work-related capabilities.")).

### C.   Plaintiff's Other Arguments

As the Court has already determined sufficient bases exist for ordering the matter remanded, the Court need not determine whether Plaintiff's other alleged errors warrant remand. However, the Court will briefly address the alleged errors in adjudicating Plaintiff's credibility so that they may be corrected on remand.

Plaintiff faults the ALJ for concluding that her statements concerning the intensity, persistence and limiting effects of her symptoms were "not credible to the extent they are inconsistent with the above residual functional capacity assessment." R.14. It is erroneous for an ALJ to find a claimant's statements not fully credible because those statements are inconsistent with the ALJ's own RFC finding. See Nelson v. Astrue, No. 5:09-CV-00909, 2010 WL 3522304, at *6 (N.D.N.Y. Aug. 12, 2010) (recommending remand for, inter alia, a proper analysis of Plaintiff's credibility as "the propriety of the ALJ's finding that Plaintiff was credible only to the extent that her statements were consistent with his own RFC determination is questionable"), report and recommendation adopted, 2010 WL 3522302 (N.D.N.Y. Sept. 1, 2010); Kennedy v. Astrue, No. 3:09-CV-0670, 2010 WL 2771904, at *5 (N.D.N.Y. June 25, 2010) (same), report and recommendation adopted, 2010 WL 2771895 (N.D.N.Y. July 12, 2010); Smollins v. Astrue, No. 11-CV-424, 2011

WL 3857123, at *10-11 (E.D.N.Y. Sept. 1, 2011); Mantovani v. Astrue, No. 09-CV-3957, 2011 WL 1304148, at *5 (E.D.N.Y. Mar. 31, 2011). Instead, SSR 96-7p requires that "[i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record." SSR 96-7p. Therefore, the Court agrees with Plaintiff that the ALJ erred in the present case by measuring Plaintiff's credibility only by assessing the consistency of her statements with the ALJ's own RFC finding, instead of evaluating all of the required factors bearing on Plaintiff's credibility prior to deciding Plaintiff's RFC.

### E.   Appropriate Remedy

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of record, a judgment affirming, modifying or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate where there are gaps in the record or further development of the evidence is needed. E.g., Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980). Failure to satisfy the treating physician rule constitutes legal error, and "ordinarily requires remand to the ALJ for consideration of the improperly excluded evidence." Zabala, 595 F.3d at 409.

On remand, the Court expects that the ALJ, Plaintiff's attorney, and Plaintiff's treatment providers, in particular Dr. Laroche, will act cooperatively so as to ensure that all necessary

medical records are submitted to the Commissioner in the most expeditious manner possible.

**IV.   Conclusion**

For the reasons set forth above, this Court finds that the Commissioner's decision to deny benefits to the Plaintiff was flawed by several legal errors requiring remand for further administrative proceedings. Therefore, Plaintiff's motion is granted to the extent stated above. The Commissioner's motion for judgment on the pleadings is denied.

**ALL OF THE ABOVE IS SO ORDERED.**


S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     July 2, 2012
           Rochester, New York

-31-